UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JENNIFER MARCHESE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00425-LEW |
| | ) |
| TRIGRAM EDUCATION PARTNERS, LLC *d/b/a* TRIGRAM EDUCATION PARTNERS, MINERVA INFLECTION STRATEGIES, LP, AMPLE LUCK INTERNATIONAL CAPITAL GROUP LTD., STANFORD SILVERMAN, and YING MA, | ) |
| | ) |
| Defendants. | ) |

## **ORDER ON MOTION TO DISMISS**

Plaintiff Jennifer Marchese is a former employee of Defendant Trigram Education Partners, LLC *d/b/a* Trigram Education Partners. She filed this action on her own behalf and as a prospective lead plaintiff in a collective/class action based on the Defendants' alleged violations of federal and state wage laws, fraud, and unjust enrichment. Complaint (ECF No. 1). The matter is before the Court on the Motion to Dismiss of Ample Luck International Capital Group Limited and Dr. Ying Ma, Ph.D. Motion to Dismiss (ECF No. 24). The Motion is granted in part and denied in part.[1]

---

[1] The Movants' request for oral argument is denied.

## BACKGROUND

The membership interest in the principal defendant, Trigram Education Partners LLC ("Trigram"), is divided 50/50 by the two other entity defendants, Minerva Inflection Strategies, LP ("Minerva"), and Ample Luck International Capital Group Limited ("Ample Luck"). As alleged, Dr. Ying Ma is the chairwoman of Ample Luck and, on information and belief, has some manner of "principal" status within Trigram.

In 2020, Trigram purchased the assets of Premier Education Group LP, acquiring multiple "vocational schools" in several states, including the Sanford, Maine, vocational school at which Marchese was employed. In connection with the purchase, one of Trigram's parents, Minerva, made certain guarantees concerning Trigram's performance moving forward. The other parent, Ample Luck, did not make any guarantee.

Jennifer Marchese was the campus president of the Sanford school when Trigram purchased it. Trigram retained Ms. Marchese's services effective June 27, 2020, with the same title and compensation she had before the purchase. At or around the time of closing on the purchase, Trigram informed Marchese and the other retained employees that payment of their wages would be forthcoming, but several months passed without any payments. Over those months, those in charge of securing funding for Trigram's operations encountered various obstacles. Evidently, the obstacles included the burgeoning COVID-19 pandemic and the Chinese government's decision to block certain funding streams Ample Luck was counting on.

On July 28, 2020, Ms. Ma, in her capacity as the chairwoman of Ample Luck, wrote a letter to Trigram's President and CEO. In the letter, Ma represented that acquisition of

"operational capital for [Trigram]" was delayed and that funds had "not yet been freed up." Compl. ¶ 23; Mot. Ex. 2 (ECF No. 24-3, PageID #96). Someone within Trigram forwarded this letter to some of Trigram's employees and assured them that they would eventually receive their paychecks. A few weeks later, someone within Trigram again informed employees that the funds were not yet available and promised a twenty percent bonus to compensate for the delay. In subsequent missives, Trigram kept promising that funds would be freed up shortly, but the funding never materialized.

      Eventually, Trigram ran into additional difficulties, including the withdrawal of its educational accreditation (based on its failure to secure credit for its educational mission) and a civil enforcement action brought by the New Hampshire Attorney General (in addition to the Sanford, Maine, school, Trigram acquired one or more schools in New Hampshire and elsewhere). Over the several months in which Trigram employees went without pay, Dr. Ma authored a few letters that Marchese references in her complaint. In addition to the letter from Ample Luck to Trigram in June 2020, and as alleged, Ma and Ample Luck "issued letters" on September 11, October 5, and November 7 stating that funds would soon be forthcoming. Compl. ¶¶ 30, 34, 38. These letters reflect that Ma, as chairwoman of Ample Luck, wrote to Trigram's CEO or its management team to explain the difficulties associated with the acquisition of credit and to apprise them of related efforts. Mot. Ex. 5 (ECF No. 24-6, PageID #103); Ex. 9 (ECF No. 24-10, PageID #111).[2]

---

[2] A copy of the alleged November 2020 letter is not of record.

Based on the foregoing events, Marchese alleges that all Defendants, "[t]hrough an ongoing series of fraudulent and otherwise patently misleading communications extending through at least May 2021, . . . falsely assure[d] Trigram employees that they would be paid in full." Compl. ¶ 42. Marchese also alleges that "[b]y all appearances and at all relevant times, Defendants . . . were in possession of the necessary funds to pay their employees, or had ready access to these funds [but] [i]nstead of making good on their obligations . . . Defendants willfully and intentionally refused to pay the wages earned by their employees." *Id.* ¶ 43.

In support of their Motion to Dismiss, Defendants Dr. Ma and Ample Luck provide eleven exhibits that fill in the factual picture. In addition to the letters identified in the preceding narrative, the exhibits reflect that Trigram is a "duly formed" corporate entity under the law of Delaware (Ex. 1); that Dr. Ma is a citizen of the People's Republic of China and a lawful U.S. resident with a residence in Connecticut; that Ma has never resided in, owned any property in, conducted business in, or traveled to Maine; that Ample Luck is organized and incorporated under the laws of the British Virgin Islands; that Ample Luck is an investment holding group whose sole shareholder is not Ms. Ma; that Ample Luck's principal place of business is in Beijing, China; that Ample Luck is not and never has been registered to do business in Maine, maintains no bank account in Maine, holds no physical property in Maine through either ownership or rental, has no employees, personnel, management, or staff residing in Maine, and has not engaged in marketing or published any content in Maine; that neither Ma nor Ample Luck were signatories to the Trigram purchase agreement; that neither ever received any income from Trigram; that neither had

any operational control over Trigram or any power over its employees; and that Ma never communicated directly with any Trigram employee known to reside in the State of Maine. Decl. of Ying Ma. (Ex. 11, ECF No. 24-12, PageID ##120-121).

In opposition to the Motion, Ms. Marchese has provided a declaration in which she relates that, as campus president, she "received" the communications that Dr. Ma/Ample Luck directed to Trigram. Decl. of Jennifer Marchese ¶ 5 (ECF No. 28-1). Marchese relates that she also received information that Ma was a co-founder and principal member of Trigram, but she has provided no evidence of anything like an ownership stake in Trigram. *Id.* ¶ 7; Opp'n Ex. A (ECF No. 28-2, PageID #154). Marchese also cites an email exchange in which Defendant Stanford Silverman, a principal of Minerva, described Dr. Ma as chairwoman, co-founder, financial partner, and 50% owner of Trigram. *Id.* ¶ 8; Opp'n Ex. B (ECF No. 28-3, PageID #155). Although this is "evidence," it is hearsay as far as the assertion of Dr. Ma's supposed ownership interest in Trigram and runs counter to the factual premised, stated in the Complaint, that Ample Luck and Minerva each own a 50% share of Trigram. Adding to the picture, Marchese also observes that Ma was a participant in efforts to uphold the school's accreditation, including by participation in an accreditation appeal hearing on January 7, 2021. *Id.* ¶¶ 15–16.

## DISCUSSION

Through their Motion to Dismiss, Defendants Dr. Ma and Ample Luck argue that this Court does not have jurisdiction over their persons. Mot. to Dismiss Mem. at 6–12 (ECF No. 24-1). Alternatively, they argue that the Complaint fails to state a claim against them as neither was the employer of Marchese or any other Trigram employee, nixing the

5

wage claims, neither ever directed any communication (i.e., alleged false representations) to any Trigram employees, nixing the fraud claim, and neither was enriched by the goings on at Trigram, nixing the unjust enrichment claim. *Id.* at 12–20.

### A.     Personal Jurisdiction

The first component of the Motion to Dismiss presents a jurisdictional challenge pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. "To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" *Astro–Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999)). When a court's personal jurisdiction over a defendant is challenged, the plaintiff has the burden of demonstrating that jurisdiction exists. *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir. 1986). A plaintiff may meet its burden based on a "prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits." *Id.* Based on that showing, the district court considers whether the plaintiff has presented "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). The plaintiff's evidence is accepted as true and construed in the light most favorable to the plaintiff's jurisdictional contention; the defendant's evidence is also considered but only to the extent it is uncontradicted. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16–17 (1st Cir. 2019). However, to the extent either party relies on conclusory allegations or farfetched inferences they will not be credited. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

When evaluating the extent of its jurisdiction over properly served persons involved in a federal-question controversy—as opposed to a pure diversity matter—a federal court looks to Supreme Court teaching on the maximal jurisdictional authority that courts may exert over persons without violating the Due Process Clause of the Fifth Amendment. *United Elec.*, *Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992). Where the subject matter of the litigation is federal, the court's personal-jurisdiction reach may be informed by the defendant's overall contacts with the United States, rather than just the forum state. *Id.*; *see also Lorelei Corp. v. Cnty. of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991). However, when service depends on a state long-arm statute, the Fourteenth Amendment's state-centered assessment of minimum contacts may indirectly govern the exercise of personal jurisdiction. *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 94 (1st Cir. 2022), *cert. denied*, 142 S. Ct. 2777 (2022).

Ample Luck has acknowledged and accepted service (ECF No. 8), but we do not know the particulars concerning Ample Luck's presence in Maine (or the United States) at the time of service. Consequently, I assume that Ample Luck's waiver of "all defenses to insufficiency of process" did not waive its personal jurisdiction challenge.[3] (*Id.*) As for Dr. Ma, the record reflects personal service of process in Connecticut. (ECF No. 4.) Because Ma is subject to the jurisdiction of Connecticut's courts of general jurisdiction, where she resides, service upon Dr. Ma establishes personal jurisdiction over her to the

---

[3] Ms. Marchese does not contend that Rule 4(k)(2) influences the jurisdictional inquiry as to Ample Luck.

7

extent that she would be subject to the jurisdiction of a Maine court of general jurisdiction. *See* Fed. R. Civ. P. 4(k). The Maine Long Arm Statute, 14 M.R.S. § 704(A), expressly extends the jurisdictional reach of Maine's courts of general jurisdiction to the limits of due process.

The Due Process Clause requires that a given defendant have sufficient minimum contacts with the forum for judicial power to extend over his or her person. Sufficient minimum contacts may be demonstrated by evidence that the defendant maintains connections with the forum state that are "so continuous and systematic" that it is fair and consistent with substantial justice for the defendant to be treated as "at home" in the forum state (so called "general jurisdiction"), or that the case before the court arises out of or is significantly related to the defendant's forum-specific contacts (so called "specific jurisdiction"). *BNSF Ry. Co. v. Tyrell*, 581 U.S. 413 (2017). As these standards suggest, it is possible for a defendant to have some contact with the forum state, including even some contact "related" to a legal controversy, yet still evade the coercive power of the forum state's courts. *Id.* at 414.

Ms. Marchese argues that the elements of personal jurisdiction are straight forward because Dr. Ma and Ample Luck "were willing and active participants in [an] unlawful scheme" that occurred in Maine. Opp'n at 1 (ECF No. 28). The unlawful scheme she envisions is in part the non-payment of wages and in part a fraudulent scheme in which, as alleged, the defendants never intended to secure the funding needed to operate Trigram's vocational schools and lied about their intention to pay wages. *Id.* at 7, 12, 13. As to the latter scheme, it rests on a strange—indeed farfetched—supposition. Specifically, it is

8

highly counter-intuitive to suppose that Trigram purchased vocational schools only to see them fail for want of start-up costs. Nevertheless, Marchese argues that Maine has a legitimate interest in the subject matter of the litigation because it involves the non-payment of Maine workers employed at a Maine school and therefore, as she sees it, all of the defendants should have anticipated litigation in Maine. Opp'n at 6-7. Although it is true that Maine has a legitimate interest in the subject matter of whether a Maine employer pays Maine workers, that is not enough standing alone to justify Maine-based proceedings against Ample Luck or Dr. Ma absent sufficient, minimum forum contacts by those defendants.

For reasons that follow, I am not persuaded that the record substantiates Ms. Marchese's contention that general or specific personal jurisdiction exists over Dr. Ma (as to any of the claims), but I am persuaded based on the prima facie showing that specific personal jurisdiction exists over Ample Luck (as to the wage claims). Because Dr. Ma's forum contacts and Ample Luck's forum contacts are interrelated—consisting of "Chairwoman Ma's" actions on behalf of Ample Luck—I discuss the two defendants simultaneously.

### 1. *General jurisdiction*

For general jurisdiction the requisite contacts must demonstrate the defendant's maintenance of a "continuous and systematic" relationship with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). These are the kind of contacts that would justify regarding the defendant as being "at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Ms. Marchese argues that Ample

9

Luck and Dr. Ma have continuous and systematic contacts with Maine based on an ownership interest in Trigram and management-level participation in Trigram's affairs. Opp'n at 13.

To begin, Ample Luck's 50% ownership interest in Trigram is not enough on its own to attribute Trigram's Maine forum contacts to Ample Luck, let alone to treat Ample Luck as at home in Maine. There is a presumption of corporate separateness that must first be overcome, and there is nothing unusual about out-of-forum corporate parents evading personal jurisdiction in claims arising out of harms associated with a subsidiary's in-forum business, at least in the absence of facts and circumstances that would warrant disregarding the entities' separate corporate forms. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 616 (1st Cir. 1988). Because Ms. Marchese disavows the intention to establish personal jurisdiction based on the disregard of corporate forms, Opp'n at 17–18, I proceed with the assumption that Ample Luck's mere membership in or presumed management of Trigram does not give cause to think it fair that Ample Luck might be sued in Maine by anyone with a claim against it, even if the claim did not arise out of Ample Luck's Maine forum contacts. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 145. Nor does it make sense to suggest that Dr. Ma should be subject to any and all suits that might be filed against her in a Maine state court. Ms. Marchese's general jurisdiction contention is a non-starter. For jurisdiction to attach, it would have to be based on a specific jurisdiction analysis.

## 2. *Specific jurisdiction*

The specific jurisdiction test is in three parts: relatedness, purposeful availment, and reasonableness. For reasons that follow, as to Dr. Ma, I find that Ms. Marchese's relatedness showing is weak and her purposeful availment showing fails. As to Ample Luck, I find that the relatedness and purposeful availment showings suffice, specifically for the federal wage claim, and that it is reasonable to assert jurisdiction over Ample Luck.

### a. Relatedness

To show relatedness, the plaintiff must show a specific nexus between her claim(s) and the forum contacts of a given defendant. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016). This is said to be a "relaxed" standard. *Id.* However, the standard anticipates a showing that the plaintiff's claims arise out of the defendant's forum-based activities. *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011). This is a claim-specific analysis.

Ms. Marchese argues that relatedness and purposeful availment are established for both Ample Luck and Dr. Ma because Ma "engaged in fraud [by] ma[king] a number of misleading statements and . . . fail[ing] to pay [Marchese's] earned wages." *Id.* at 18.[4] Looking more closely at Ma's acts and their relation to the fraud claim, I find that Marchese has made, at best, only a weak showing of relatedness on her fraud claim. Dr. Ma, writing

---

[4] The authority Ms. Marchese cites in support of the proposition is not a personal jurisdiction case. Rather, it explains that a shareholder in a company may be independently liable on a fraud claim based on acts undertaken for the company. *Johnson v. Exclusive Props. Unlimited*, 720 A.2d 568, 572 (Me. 1998). For reasons that will follow, I reject the assertion that Marchese has stated a viable fraud claim and find that the law does not support the extension of her FLSA claim (or state wage claim) to Dr. Ma.

on Ample Luck letterhead, informed Trigram's CEO and management team of her efforts to secure funding and disappointments related to the same. There is no evidence that Ma directed any statements to Marchese or any other Trigram employee. Nor, in any event, were promises made in her letters. This is a weak showing—arguably a non-showing—on the relatedness of Ma's communication-based contacts to Marchese's fraud claim.[5]

Turning to the wage claims, I begin by observing that Dr. Ma's mere reports to Trigram's managers did not give rise to a contract of employment between Ma and Trigram's employees. That much should be obvious. However, the FLSA has an expansive definition of employer that encompasses "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). How this expansive definition applies to Dr. Ma and to Ample Luck differs in important respects.

In order to sweep individual corporate officers within the definition, the law requires a showing that the officer in question had "a significant ownership interest [and] operational control of significant aspects of the corporation's day to day functions, including compensation of employees," and that the officer "personally made decisions to continue operations despite financial adversity during the period of nonpayment." *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983)). The record does not support the finding that Dr. Ma had the requisite significant ownership interest in either Trigram or Ample Luck. Although there

---

[5] Fraud requires proof that the defendant made a false representation of a material fact, with knowledge of the representation's falsity or in reckless disregard of whether it was true or false, for the purpose of inducing another party to act in reliance, where the other party justifiably relied on the representation as true and acted on it to the party's damage. *Barr v. Dyke*, 49 A.3d 1280, 1286-87 (Me. 2012).

12

is a letter of record in which Ma is described to the accreditation board as an owner of Trigram, there is no reliable corroborating evidence that the characterization was true. Indeed, the fact alleged in the Complaint is that Minerva and Ample Luck are the only owners of Trigram. The record also indicates that Ma does not have an ownership stake in either Ample Luck or Minerva. These shortcoming in the prima facie jurisdictional record mean that the FLSA claim is not related to, let alone well-stated against, Ma, despite the statute's expansive definition of employer.[6]

The picture is different when one considers Ample Luck. Ample Luck is not only a 50% owner of Trigram, but also plausibly reserved for itself the duty of securing start-up funding for Trigram's multi-state operations (including initial payroll). Additionally, the dissemination of Ample Luck's communications to Trigram's officers was at least in part a reason Trigram was able to maintain its employees throughout the accreditation process. In this context, Ample Luck's efforts to secure funding would appear to qualify as actions "directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). When it comes to related corporations, courts should consider the "economic reality" of the situation and appreciate that "[t]here may be several simultaneous employers." *Donovan*, 712 F.2d at 1510. For example, related companies may comprise an integrated enterprise for purposes of federal labor law where there is (1) an interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4)

---

[6] Ms. Marchese fails to elucidate how any of the elements of her claims against Dr. Ma are met based on Ma's participation in Trigram's accreditation hearing. Marchese also does not attempt to separately support her bid for personal jurisdiction based on the relatedness of Ma's forum contacts to the elements of Marchese's unjust enrichment claim.

common ownership. *Romano v. U–Haul Int'l*, 233 F.3d 655, 662 (1st Cir.2000). Assuming, counterfactually, that Ample Luck's fundraising efforts had proven fruitful, it appears doubtful that Ample Luck would ever have had occasion to exercise control over the day-to-day operations of Trigram or its labor relations. However, at least for the preliminary start-up capital needed for operational success, which included meeting short-term payroll, Ample Luck appears to have been the party holding the bag. The inadequacy of funding was quite clearly "related" to Marchese's wage claims and depicts an early moment in the relationship of these companies when they were functionally integrated by at least some interrelated operations, some common management, and common ownership. Although not all four parts of the integrated enterprise test are solidly met (centralized control of labor relations being the weak link), this shortcoming is made up for based on the "relaxed" nature of the relatedness standard and Ample Luck's apparent assumption of the burden of securing for Trigram funding needed for its immediate payroll expenses.

   b. <u>Purposeful availment</u>

  The second part of the specific jurisdiction test looks for evidence that the defendant's conduct reflects the defendant's purposeful availment of the privilege of conducting activities in the forum state that would make the defendant's involuntary presence before the state's courts foreseeable. *Copia Communications, LLC v. AMResorts, L.P.*, 812 F.3d 1, 6 (1st Cir. 2016). Ma's activities related to securing foreign funding and her communications to Trigram managers about the same do not reflect purposeful availment of the privilege of conducting activities in Maine. Nor do her accreditation efforts, concerning which we know next to nil. There is no evidence, for example, that

Ma's fundraising activity or participation in the accreditation hearing occurred in Maine. On this record I do not see why Ma would anticipate being sued by Trigram employees in state court based on her failure to succeed in Ample Luck's fundraising effort.

But again, the picture is different when the focus is on Ample Luck. Ample Luck undertook or oversaw the fundraising effort for Trigram's immediate operational expenses, including payroll, and did so for its own, fledgling subsidiary. Based on the legal standards at play in the FLSA context, already discussed, a corporate parent should foresee FLSA wage litigation in any state in which it installs a subsidiary that is undercapitalized even for purposes of immediate payroll.

### c. Reasonableness

Any exercise of jurisdiction must be reasonable. *Adelson*, 652 F.3d at 83. Reasonableness is assessed based on a collection of gestalt factors: the defendant's burden of appearing, the forum's interest in adjudicating the matter, the plaintiff's interest in convenient and effective relief, the judicial system's interest in effective controversy resolution, and the interest of relevant sovereigns in the promotion of relevant social policies. *Id.*

Here, insofar as Dr. Ma is concerned, Marchese's weak- to non-showing of relatedness and, more importantly, her failure to demonstrate purposeful availment obviate the need for a more searching inquiry into reasonableness. *See Motus, LLC v. CarData Consultants, Inc.,* 23 F.4th 115, 122 (1st Cir. 2022) ("The plaintiff must carry the devoir of persuasion on all three of these elements, and the plaintiff's failure as to any one of them defenestrates its claim of specific jurisdiction."). Consequently, I limit my reasonableness

discussion to Ample Luck. Because I have found relatedness and purposeful availment insofar as Ample Luck is concerned, the laboring oar is passed to Ample Luck to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The gestalt factors do not afford a compelling case for finding that the exercise of personal jurisdiction over Ample Luck would be unreasonable. To the contrary, what is most compelling is the fact that there is no state other than Maine more interested in the adjudication of Marchese's Maine-based employment claims, or a judicial forum better positioned for effective controversy resolution. Additionally, the fact that Ample Luck installed a corporate subsidiary in Maine without assuring capital for immediate payroll makes it reasonable for Ample Luck to be subject to the resulting FLSA litigation in Maine.

### 3. *Summary*

Because Marchese's showing as to relatedness and purposeful availment suffice with regard to Ample Luck and because Ample Luck's showing as to the unreasonableness of the exercise of personal jurisdiction is not compelling, Ample Luck's motion to dismiss on jurisdictional grounds will be denied. However, Dr. Ma's motion to dismiss will be granted because she is not at home in Maine and did not purposefully avail herself of the privilege of conducting activities in Maine.

### B.     **Failure to State a Claim**

As an alternative to dismissal for want of personal jurisdiction, Ample Luck argues that Ms. Marchese's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

To avoid dismissal, Ms. Marchese must plead in her complaint "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying this standard, the Court will accept all factual allegations as true and consider whether the facts, along with reasonable inferences that may arise from them, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). The Court will not accept as true statements that are merely conclusory recitations of legal standards. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014).

Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Furthermore, "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

### 1. *Wage claims*

The primary thrust of Ample Luck's Motion to Dismiss is that Marchese has failed to allege that Ample Luck was her employer. Mot. at 15. As discussed above, the generous definition of employer found in the FLSA warrants a different inference on the FLSA

claim. Given the undercapitalization of Trigram, even for purposes of preliminary payroll, I find that relief against Ample Luck on the wage claims[7] is plausible even if unlikely.

### 2. Fraud claim

Ample Luck also challenges the fraud claim. It argues that the allegations lack particularity and are illogical given that Ample Luck never communicated directly with Trigram's employees and only expressed an opinion about the possibility of future developments. Mot. at 17-19.

Fraud requires proof that the defendant made a false representation of a material fact, with knowledge of the representation's falsity or in reckless disregard of whether it was true or false, for the purpose of inducing another party to act in reliance, where the other party justifiably relied on the representation as true and acted on it to the party's damage. *Barr v. Dyke*, 49 A.3d 1280, 1286–87 (Me. 2012). The requirement of a false representation of a material fact must concern a past or present fact, not a hoped-for eventuality. *Kearney v. J.P. King Auction Co., Inc.*, 265 F.3d 27, 34 (1st Cir. 2001); *Ambrose v. New England Ass'n of Sch. & Colleges, Inc.*, 252 F.3d 488, 497 (1st Cir. 2001).

I agree with Ample Luck that the financial forecasts found in Ample Luck's letters would not be actionable as fraud because as forecasts they were not statements of past or present fact. That resolves only part of the fraud claim. Marchese also contends that the representations of trying to secure funding were entirely bogus, that funding was in fact available, and that there was never any intention of paying Trigram employees (or

---

[7] I save for another day the question whether Maine wage law has the same reach when it comes to identifying employers.

apparently maintaining accreditation at Trigram's schools). Opp'n at 18. At present, that contention rests on nothing other than gossamer strands of conjecture and therefore fails to state a plausible claim. Marchese is of course free to amend her complaint if discovery supports it. Perhaps Marchese will discover that other campuses were funded, and only certain campuses were left unable to meet payroll. But at present the complaint does not include facts that would warrant crediting this, as yet, conjecture.

### 3. *Unjust enrichment*

Finally, Ample Luck requests the dismissal of Marchese's unjust enrichment claim. "To prevail on a claim for unjust enrichment, the complaining party must show that (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 161 A.3d 696, 699 (Me. 2017) (quotation marks omitted). Ample Luck argues that the existence of an employment contract with Trigram makes the unjust enrichment claim non-actionable. Mot. at 19. *See In re Wage Payment Litigation*, 759 A.2d 217, 224 (Me. 2000) ("The contract of employment between the parties precludes the plaintiffs from maintaining a cause of action for unjust enrichment."). Ample Luck otherwise argues that the pleadings are too thin to infer the nature of the benefit conferred to state a plausible claim. Mot. at 20.

The Motion is denied as to the unjust enrichment claim. The record does not divulge the existence of an employment contract between Ample Luck and Marchese or any other Trigram employees, so Ample Luck's initial argument is unavailing. Furthermore, it is at

least plausible that Trigram's retention of Marchese and other employees conferred some benefit on Ample Luck insofar as Ample Luck had an interest in maintaining Trigram's accreditation. Presumably, the mass exodus of Trigram's employees would not have served the accreditation objective.

## CONCLUSION

The Motion to Dismiss (ECF No. 24) is GRANTED IN PART and DENIED IN PART. The claims against Ying Ma are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction over her person. Count III (fraud) is DISMISSED WITHOUT PREJUDICE as to Defendant Ample Luck.

SO ORDERED.

Dated this 7th day of February, 2024

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE