UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JENNIFER MARCHESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00425-LEW |
| ) | |
| TRIGRAM EDUCATION PARTNERS, ) | |
| LLC *d/b/a* TRIGRAM EDUCATION ) | |
| PARTNERS, MINERVA ) | |
| INFLECTION STRATEGIES, LP, ) | |
| AMPLE LUCK INTERNATIONAL ) | |
| CAPITAL GROUP LTD., and ) | |
| STANFORD SILVERMAN ) | |
| ) | |
| Defendants ) | |

**ORDER ON DEFENDANT AMPLE LUCK'S
MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Jennifer Marchese is a former employee of Defendant Trigram Education Partners.  She filed this action on her own behalf and as a prospective lead plaintiff in a collective/class action suit based on Defendant's alleged violations of federal and state wage laws, fraud, and unjust enrichment.  Previously, Defendant Ample Luck moved to dismiss the case (ECF No. 24).  I granted Ample Luck's motion in part, as to Marchese's fraud claim.  Now before the Court is Ample Luck's Motion for Summary Judgment (ECF No. 45) on the remaining claims.  After careful review of the parties' arguments and the underlying record, Ample Luck's motion is denied.

## BACKGROUND[1]

Years ago, Jennifer Marchese became employed by Premier Education Group at the Harris School in Sanford where she worked her way from an hourly instructor to Campus President. She was Campus President in 2020 when Defendant Trigram purchased Premier's assets, including the Harris School. Following the purchase, Trigram hired Marchese with the same title and compensation.

Trigram's membership interest is split 50/50 between Defendants Minerva and Ample Luck. Defendant Stanford Silverman is a principal of Minerva. Dr. Ying Ma is chairwoman of Ample Luck. Silverman has also represented to Marchese and other Trigram employees that Dr. Ma was a co-founder and principal of Trigram. In her role as Ample Luck's chairwoman, Dr. Ma worked to secure funding for Trigram. Although Dr. Ma was originally named in this suit, the claims against her were dismissed for want of jurisdiction.

Trigram quickly had financial difficulties. Those in charge of obtaining funding for Trigram encountered obstacles such as the ongoing COVID-19 pandemic and the Chinese Government's decision to block some of Ample Luck's funding streams. Throughout these

---

[1] This background is drawn from the assertions properly presented and supported in Ample Luck's statement of material facts (ECF No. 46), Marchese's opposing statement and additional statement of material facts (ECF No. 48), and Ample Luck's reply statement of material facts (ECF No. 49). *See* Fed. R. Civ. P. 56(c); D. Me. Local R. 56. These facts are undisputed unless otherwise noted and I treat them as true solely for the purpose of deciding the pending motions.

troubles, Ample Luck and Ma communicated their fundraising efforts to Trigram, which in turn gave various payroll updates to its employees.

Plaintiff directs the Court's attention to specific communications from Dr. Ma and Ample Luck. In late July of 2020, Dr. Ma sent a letter to Trigram's CEO, stating in part:

> This letter is to update you on the progress of obtaining the operational capital for [Trigram]. I am still awaiting access to funds that have not yet been freed up. . . . I apologize for the stress placed on the company but please know that I am working feverishly to make those funds available. . . . The capital loan . . . is proceeding on schedule . . . .

The next day, Trigram, in turn, forwarded this letter to its employees with an assurance that unpaid employees would receive compensation. This was one of many such Trigram messages opining on an employee payment schedule.

Just over a month later, Dr. Ma followed up with another Trigram funding update to Trigram's CEO. This one stated a line of credit for Trigram was "in the final stages." Dr. Ma informed Trigram the fund transfer may be expedited and arrive in 2-3 days, but if not, it would take 7-10 business days. Defendant Silverman later attached this letter in an email to some of Trigram's management members, stating that "Dr. Ma is investing the $10 million in Trigram . . . in which she is the Chairwoman of the Board, Co-Founder, Financial Partner and a 50% owner."

Apparently, the funding did not come in time. Three weeks later, Dr. Ma sent a letter to Trigram management stating, "we are confident that we are at the final stages of the process." The letter explained that the previously expected financing was delayed because of the Mid-Autumn Holiday in China. Instead, Trigram would "not receive the funds until October 14." On Plaintiffs' facts, this pattern continued. Ample Luck

communicated to Trigram funding was imminent and Trigram communicated the same to its employees.

Because of its failure to secure credit, Trigram's educational accreditation was withdrawn. During the accreditation appeal process, Defendant Silverman wrote to the Accreditation Council listing Dr. Ma as participating on behalf of Trigram as its Co-Founder and Principal. Dr. Ma did participate, but accreditation was not renewed.

Based on these facts and circumstances, Marchese alleges that Ample Luck and the other Defendants, "[t]hrough an ongoing series of fraudulent and otherwise patently misleading communications . . . falsely assure[d] Trigram employees that they would be paid in full." Compl. ¶ 42. Marchese contends she and other employees worked unpaid from the summer of 2020 through Trigram's eventual loss of accreditation and, to this day, have never been paid their wages.

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that can determine the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a party to raise a genuine issue of material fact, it must demonstrate that the record contains evidence that would permit the factfinder to resolve the material issues in its favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 199) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case."). "If the court finds that no genuine issue of material fact exists and that no

4

reasonable jury would favor the nonmoving party, then it must grant the moving party's motion." *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 7 (1st Cir. 2025).

Plaintiffs' Complaint charges all Defendants with violating the Fair Labor Standards Act ("FLSA"), violating Maine's wage and hour statute, fraud, and unjust enrichment. I address each of the claims in turn, except the fraud claim.[2]

A.   WAGE CLAIMS

  1.   *FLSA*

The thrust of Ample Luck's motion is that it cannot be considered an "employer" under the FLSA. Ample Luck views Trigram as the sole employer of Marchese. But the FLSA broadly defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Where there are multiple related entities involved, courts should consider the "economic reality" of the situation and keep in mind "there may be several simultaneous employers." *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983).

---

[2] As to fraud, I previously dismissed that count without prejudice because I found the financial forecasts sent between Ample Luck and Trigram were not statements of past or present fact. Order on Mot. to Dismiss (ECF No. 32) at 18-19. I also found Plaintiff's contention that Ample Luck had the money to fund Trigram all along but never intended to pay up "nothing more than the gossamer strands of conjecture." *Id.* at 19. Although I also noted that Plaintiff may, through discovery, find evidence to amend the fraud allegations, Plaintiffs never sought to amend the Complaint to assert the facts needed to state a nonspeculative claim. Ample Luck now requests the entry of final judgment on the claim. Mot. at 11. A district court can grant final judgment as to fewer than all the pending claims "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). I decline to enter final judgment because I do not see that there are circumstances necessitating an early appeal of the dismissal of the fraud claim. Ample Luck does not identify any hardship or injustice that would arise from a consolidated appeal at the conclusion of the larger case. Nor is it apparent why Ample Luck would contemplate appealing the dismissal order. *See, e.g.*, *Int'l Ass'n of Machinists & Aerospace Workers v. Verso Corp.*, 121 F. Supp. 3d 201, 230 (D. Me. 2015); *McAdams v. McCord*, 533 F.3d 924, 928 (8th Cir. 2008); *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980); *see also In re N. Transatlantic Carriers Corp.*, 423 F.2d 139, 141 (1st Cir. 1970) (mentioning "the universal policy against piecemeal appeals" when discussing Rule 54(b)).

The First Circuit recognizes related entities may be an "integrated enterprise" where they have (1) an interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000). Ample Luck takes the use of the "and" conjunction to mean the *Romano* list is an all-or-nothing inquiry. This is incorrect. A Plaintiff does not need to show all four factors are met for a court to find the defendant is an employer. *Burnett v. Ocean Props., Ltd.*, 987 F.3d 57, 65 (1st Cir. 2021). But a court should place "special emphasis on the control of employment decisions." *Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 40-41 (1st Cir. 2007) (assessing employer liability in alleged violation of Consolidated Omnibus Budget Reconciliation Act).

Ample Luck argues that because Plaintiff has failed to offer evidence that Ample Luck exercised any control over her or any Trigram employee, it cannot be considered an employer. While such control is a standout factor, placing too much emphasis on it may run afoul of the FLSA's expansive definition of employer. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 676 (1st Cir. 1998) ("[It] is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer. For these reasons, we conclude that the absence of direct, on-site supervision does not preclude a determination [of employment] within the broad definition of the FLSA."). Moreover, the First Circuit has noted that the "role played by the corporate officers in causing the corporation to undercompensate employees [is] important to the analysis because [it] suggest[s] that an individual controls a corporation's

6

financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." *Id.* at 678.

At the motion to dismiss stage, I found it plausible that Ample Luck was an FLSA employer and part of an integrated enterprise, though I found centralized control of labor relations wanting. Order on Mot. to Dismiss at 13-14. Plaintiff has still not demonstrated Ample Luck exerted any day-to-day control over labor relations. Still, the FLSA's expansive definition of employer militates against this factor being dispositive, even if it holds special weight. Also important to the analysis is Ample Luck's financial control over Trigram. As in *Herman*,[3] Ample Luck's ability to secure funding directly influenced Trigram's ability to meet payroll, and thus comply with the FLSA. In this way, one could reasonably conclude Ample Luck had one significant form of control over labor relations: whether laborers were paid. And during Trigram's acquisition of the Harris school until its loss of accreditation, one could also find the remaining integrated enterprise factors were present. All in all, given the FLSA's loose relatedness standard and the flexibility of the

---

[3] Although the First Circuit noted this in the context of addressing individual officer liability under the FLSA, the principle is much the same when applied to Ample Luck as an entity. In *Herman*, corporate officers argued they could not be individually liable as employers because they "had no 'true operational control over any aspects' of the business." *Herman*, 163 F.3d at 676. In rejecting this argument, the First Circuit applied the economic reality test and noted that an officer's control over the compensation of employees demonstrated "operational control of significant aspects of the corporation's day to day functions." *Id.* at 677 (citing *Donovan*, 712 F.2d at 1511-14). Likewise, Ample Luck's control of Trigram's payroll funding indicates it had control over at least one significant aspect of Trigram's labor relations.

economic reality test, a genuine issue exists as to Ample Luck's employer status.[4] Ample Luck's motion for summary judgment as to Plaintiff's FLSA claim is therefore denied.[5]

### 2. *Maine Wage and Hour Statute*

Maine's own wage statute does not define "employer." *See* 26 M.R.S. § 1. In addressing Ample Luck's motion to dismiss, I "save[d] for another day the question of whether Maine wage law has the same reach when it comes to identifying employers." Order on Mot. to Dismiss at 18 n.7. Now that the day has come, Ample Luck makes more or less the same arguments it does under the FLSA. This rehash is understandable given the Maine Law Court's endorsement that "federal law does provide some useful guidance in formulating a coherent state law concept of 'employer.'" *Dir. Of Bureau of Lab. Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987). *See also id.* ("[T]he economic reality and totality of the factual circumstances in a particular case must guide a court's determination of the employer's status rather than formalistic labels or common law notions of employment relationships.").

---

[4] A defendant's employer status under the FLSA is widely regarded as a question of law. *See*, *e.g.*, *Costello v. Molari*, *Inv.*, No. 17-cv-30184, 2019 WL 6170864, at *4 (D. Mass. Nov. 20, 2019 (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)); *see also Karr v. Strong Detective Agency*, *Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1986) (collecting authority). Nonetheless, Ample Luck's employer status is considerably fact dependent and, on the record before me, I refrain from deciding it at the summary judgment stage and conclude only that the record generates a genuine issue of material fact.

[5] Ample Luck also contends that Plaintiff cannot prevail on her FLSA claim because she cannot show Ample Luck acted willfully or intentionally, as alleged in the Complaint. However, FLSA unpaid wage claims require only actual or constructive knowledge of an employee's uncompensated work. *See Manning v. Boston Medical Center*, 725 F.3d 34, 44 (1st Cir. 2013). Willfulness serves only to provide enhanced civil penalties. *See* 29 U.S.C. § 216(e)(2). Notwithstanding the Complaint's enhanced allegations, at the summary judgment phase Plaintiff has raised enough evidence to permit a factfinder to conclude Ample Luck had knowledge of unpaid-yet-working employees.

At the very least, the Maine Law Court considers lower courts' application of the integrated employer test to not be in obvious error. *See Batchelder v. Realty Res. Hospitality, LLC*, 914 A.2d 1116, 1121 (Me. 2007); *see also Daniels v. Narraguagus Bay Health Care Facility*, 45 A.3d 722, 728-29 (Me. 2012) ("We have not yet decided whether to adopt the integrated enterprise theory."). Although Maine has not explicitly endorsed the integrated employer approach, *Cormier* suggests the Law Court would approve using federal law as a guidepost and concluding a record that raises a genuine issue under federal law also raises a genuine issue under Maine law. As such, Ample Luck's motion for summary judgment will be denied as to Plaintiff's claims under Maine's wage and hour statute.

**B.   UNJUST ENRICHMENT**

Ample Luck asserts that, as a matter of law, some manner of employment contract existed between Trigram and Marchese. Based on that express or implied contract, it extrapolates that the unjust enrichment claim serves no purpose. Mot. at 12. A claim of unjust enrichment holds out the prospect of an equitable recovery where the plaintiff acts in a way that benefits the defendant, the defendant is aware of the benefit, and the circumstances make it inequitable for the defendant to retain the benefit without paying compensation. *Tucci v. City of Biddeford*, 864 A.2d 185, 189 (Me. 2005). But where a dispute about compensation arises out of a legal obligation, such as a contract of employment, the plaintiff must rest her claim on the legal obligation, because that is her claim at law. *Wahlcometroflex, Inc. v. Baldwin*, 991 A.2d 44, 49 (Me. 2010) ("To pursue unjust enrichment in equity, the plaintiff must lack an adequate remedy at law.").

Usually, "the existence of a contractual relationship precludes recovery on a theory of unjust enrichment." *Stine v. Bank of Am., N.A.*, No. 16-CV-109, 2016 WL 5135607, at *5 (D. Me. Sept. 21, 2016). In this case, there is no claim for breach of contract. Plaintiff instead invoked federal and state statutory claims that include damage multipliers. But the statutory claims depend on the existence of an employment contract. Moreover, the summary judgment record establishes as an undisputed fact that, following its purchase of the Harris School, Trigram hired Marchese with the same title and compensation she had previously. Stmt. ¶ 3; Add'l Stmt. ¶ 2. That undisputed fact directs a further finding of either an express or an implied contract running between Trigram and Marchese. That finding would require the dismissal of the unjust enrichment claim as to Trigram, but not necessarily its parent company, Ample Luck. There might not be any contract between Marchese and Ample Luck, since the contract was originally drawn between Marchese and Ample Luck's subsidiary, Trigram.

In *Levesque v. Iberdrola, S.A.*, this Court concluded that "a plaintiff may not bring an unjust enrichment action against a parent corporation where the dispute is governed by the plaintiff's express contract with that corporation's subsidiary." No. 19-cv-00389, 2021 WL 3476092, at *13 (D. Me. Aug. 6, 2021). *Levesque*'s rationale was the practical concern that a contrary rule "would result in a parent corporation being potentially liable on an unjust enrichment theory any time its subsidiary breaches a contract." *Id.* That rule makes sense in most cases. However, this case may (or may not) be an exception. Here, at Ample Luck's direction, entreaties were made to Trigram's employees to persuade them to continue working without pay for Trigram, based on the promise of funding to be acquired

10

by Ample Luck, so that Trigram might not fail. That may or may not have given rise to yet another employment contract between Ample Luck and Trigram employees, but assuming it did not, unjust enrichment could provide relief in the absence of a claim at law.[6]

But Plaintiff's case against Ample Luck is still premised on claims at law, namely the statutory wage claims. If Plaintiff succeeds with her statutory claims, which turns largely on proof of Ample Luck's employer status, then the unjust enrichment claim will be extinguished by the legal remedy. This begs the question whether there is a foreseeable scenario in which it would be equitable to impose liability on Ample Luck for unjust enrichment despite Plaintiff's potential loss on her statutory claims. In effect, if Plaintiff fails to persuade the decision maker that Ample Luck deserves to be treated as her employer under the FLSA or Maine wage law, would the imposition of unjust enrichment liability nevertheless be equitable?[7] Ultimately, I conclude that it is best to punt on this question at the summary judgment stage because it may not require resolution. Furthermore, that approach appears to be most consistent with Plaintiff's generally recognized right to pursue alternative remedies. *See Riley v. Gilmore*, No. 05-cv-180, 2006 WL 521710, at *1 (Me.

---

[6] The record would permit the factfinder to determine that Ample Luck received a benefit from Marchese and other Trigram employees. A reasonable jury could conclude Ample Luck intended to foot the bill on Trigram's payroll yet saved that expense with virtually no downside. *See Mass. Eye and Ear Car Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 59-60 (1st Cir. 2009) ("A 'benefit' for purposes of an unjust enrichment claim is any form of advantage that has a measurable value, including the advantage of being saved from an expense or loss." (quotation and citation omitted)).

[7] Both the statutory claims and the unjust enrichment claim overlap in terms of the need to prove that the defendant knew of the work in question. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 44 n.15 (1st Cir. 2013) ("[A]n employer's actual or imputed knowledge is a necessary condition to finding the employer suffers or permits that work." (citation omitted)); *Tucci*, 864 A.2d at 189 (reciting elements of unjust enrichment, including requirement that defendant appreciated or knew of the benefit conferred).

11

Feb. 1, 2006) ("If the pleadings left open the possibility that the parties did not have a contractual relationship, then . . . the claim for unjust enrichment would be proper as an alternative theory of liability."); *June Roberts Agency*, *Inc. v. Venture Props.*, *Inc.*, 676 A.2d 46, 49 n.1 (Me. 1996) ("[Plaintiff], however, is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on the theory of unjust enrichment."). In any event, Ample Luck can rest assured that the persistence of the claim in equity will in no event justify any extra or duplicative recovery as the final disposition on the claim is entrusted to the Court rather than the jury.

## CONCLUSION

For the foregoing reasons, Ample Luck's Motion for Summary Judgment (ECF No. 45) is DENIED. Counts I, II, and IV will proceed to trial.

**SO ORDERED.**

Dated this 8th day of May, 2025.

/S/ Lance E. Walker
Chief U.S. District Judge